**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**MALLIKARJUN MUTHAVARAPU,**

**Plaintiff,**

**v. CASE NO:**

**BLUETRITON BRANDS, INC.**

**d/b/a PRIMO BRANDS,**

**Defendant.**

______________________________________/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, MALLIKARJUN MUTHAVARAPU, (hereinafter "Mr. Muthavarapu" or "Plaintiff"), by and through the undersigned counsel, hereby files this Complaint and Demand for Jury Trial against defendant, BLUETRITON BRANDS, INC. d/b/a PRIMO BRANDS, (hereinafter "Primo Brands" or "Defendant") and states the following:

## INTRODUCTION

1. The Plaintiff brings this action against Defendant, PRIMO BRANDS, his former employer, seeking to recover damages for unlawful discrimination based on race, national origin, and disability in violation of the Florida Civil Rights Act of 1992, as amended, § 760.10 et seq. ("FCRA"),

42 U.S. Code § 1981, and the Florida Private Whistleblower Act, § 448.102 et seq.

2. As further set forth below, Plaintiff alleges that Defendant unlawfully discriminated against him on the basis of his race, national origin, and disability, subjected him to a hostile work environment, denied him reasonable accommodations and promotional opportunities, and unlawfully terminated his employment in retaliation for reporting safety violations and engaging in other protected activity, all in violation of his rights under the FCRA, 42 U.S.C. § 1981, and Florida's Private Whistleblower Act.

3. As a direct and proximate result of Defendant's unlawful actions, Plaintiff has suffered actual damages including, but not limited to, loss of income, loss of opportunity for future income, loss of benefits, emotional distress, mental anguish, embarrassment, and humiliation.

4. Plaintiff has incurred costs and attorney's fees in bringing this matter and seeks compensatory damages, punitive damages, attorneys' fees, costs, and other appropriate relief.

## JURISDICTION AND VENUE

5. This Court has jurisdiction of this action pursuant to 28 U.S.C. §§

1331 and 1343 and 42 U.S.C. § 2000e-5. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a) and the principles of pendent jurisdiction.

6. This Court has jurisdiction to grant declaratory relief, declare the rights and legal relations of the parties, and order further relief pursuant to 28 U.S.C. §§ 2201 and 2202.

7. Venue is proper in the United States District Court for the Middle District of Florida, Tampa Division, pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims herein occurred within this District and Division and pursuant to 42 U.S.C. § 2000e-5(f)(3) because the unlawful employment practices out of which Plaintiff's claims herein arise were committed within this District and Division. All facts and circumstances arising from this dispute took place in Hillsborough and Pasco Counties, Florida.

**PARTIES**

8. Plaintiff, MALLIKARJUN MUTHAVARAPU, is a 56-year-old Indian male and permanent resident of the United States who holds a valid green card and is not a naturalized citizen. Plaintiff was born in India and resides in Wesley Chapel, Florida, located in Pasco County. Plaintiff suffers

from chronic migraines and a work-related knee injury, which substantially limit one or more major life activities.

9. Plaintiff is a member of a class protected against discrimination and retaliation based on his race, national origin, and disability under 42 U.S.C. § 1981, the Florida Civil Rights Act, and Florida's Private Whistleblower Statute.

10. Plaintiff holds a Bachelor's Degree from Nagarjuna University in India. From approximately late 2023 through June 23, 2025, Defendant employed Plaintiff as a Production Tech for over 1.5 years until his unlawful termination.

11. At all times material herein, Plaintiff met the definitions of "employee" and "eligible employee" under all applicable federal and state statutes.

12. The Defendant, PRIMO BRANDS, also known as Primo Brands of Zephyrhills, BLUETRITON BRANDS INC., f/k/a Nestlé Waters North America Inc., and Blue Triton Brands Inc., is a corporation with its principal place of business located at 1150 Assembly Dr, Suite 800, Tampa, Florida 33607.

13. At all times material herein, Defendant regularly conducted,

and continues to conduct, business throughout Florida from its facility at 4330 20th Street, Zephyrhills, Florida 33542, where it employed Plaintiff.

14. At all times material herein, Defendant employed fifteen (15) or more employees and met, and continues to meet, the definitions of "employer" under all applicable federal and state statutes including, but not limited to, the Florida Civil Rights Act, Title VII of the Civil Rights Act of 1964, and the Americans with Disabilities Act.

15. At all times material herein, Defendant acted as a "person" under color of state law for purposes of 42 U.S.C. § 1981.

16. Accordingly, Defendant is liable under the Florida Civil Rights Act, 42 U.S.C. § 1981, and Florida's Private Whistleblower Statute for the unlawful discrimination, retaliation, and whistleblower violations alleged herein.

**ADMINISTRATIVE PREREQUISITES**

17. Plaintiff has properly exhausted all administrative prerequisites prior to filing the instant lawsuit.

18. On June 23, 2025, Plaintiff timely dual-filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC") and the Florida Commission on Human Relations

("FCHR") against Defendant alleging race, national origin, and disability discrimination, hostile work environment, and retaliation (EEOC Charge No. 511-2025-03986). Plaintiff's Charge was filed with the EEOC's Tampa Field Office located at 501 East Polk Street, Suite 1000, Tampa, Florida 33602. The most recent and continuing discrimination alleged in Plaintiff's Charge occurred on May 16, 2025 and is ongoing.

19. On July 17, 2025, the EEOC issued Plaintiff a Notice of Right to Sue in reference to his Charge of Discrimination against Defendant, which was signed by Tamra S. Schweiberger, Director.

20. More than one hundred eighty (180) days have elapsed since the filing of Plaintiff's Charge of Discrimination and the FCHR has not conciliated or determined whether there is reasonable cause. Therefore, Plaintiff is entitled to bring his FCRA claims in the instant civil action against Defendant and jurisdiction is proper in this Court. See §§ 760.11(4)(a) and 760.11(8), Florida Statutes.

21. All conditions precedent to bringing this action have been performed or have occurred.

**GENERAL ALLEGATIONS**

22. On or about late 2023, Defendant hired Plaintiff as a Production

Tech at its Zephyrhills, Florida facility, earning $23.46 per hour on a bi-weekly pay schedule. Plaintiff brought with him a Bachelor's Degree from Nagarjuna University in India and relevant professional experience.

23. During his employment, Plaintiff was directly supervised by Jeffery Wilson, who conducted bi-annual performance evaluations every six months. Despite Plaintiff's qualifications and satisfactory job performance, Wilson consistently issued "needs improvement" ratings in Plaintiff's evaluations, which Plaintiff believes were unfounded and reflected discriminatory bias based on his race and national origin as an Indian employee.

24. Defendant repeatedly denied Plaintiff advancement opportunities and promotions to supervisory positions. Instead, Defendant promoted less qualified individuals to these positions, demonstrating a pattern of discriminatory treatment based on Plaintiff's race and national origin.

25. Defendant's attendance and scheduling practices also subjected Plaintiff to repeated scrutiny and discipline. Defendant used the Velocity system for vacation requests, but the system did not function properly for Plaintiff. Plaintiff was told that the problem was related to his name having

been entered incorrectly in the system, although Defendant never provided him a clear explanation or correction.

26. During the last week of October, Plaintiff requested vacation through text messages to supervisor Jeffery Wilson to visit Puerto Rico from the last couple of days of December through the first week of January, providing approximately two months' advance notice. Plaintiff repeatedly reminded Wilson of the request before his departure. Wilson verbally acknowledged the request and, even on the day before Plaintiff left, was aware that Plaintiff intended to take the vacation and that Plaintiff's lead would also be on vacation. Despite this advance notice and the repeated reminders, Wilson left Plaintiff on the work schedule. When Plaintiff returned, Wilson called him into the supervisors' office, advised him in front of a mechanics supervisor that he had accumulated eight attendance points because the vacation supposedly had not been approved, and immediately asked Plaintiff to sign the discipline. Plaintiff refused and went directly to Human Resources.

27. Plaintiff showed Human Resources representative Kristina his text messages documenting the vacation request and his repeated communications with Wilson. Kristina expressed concern that the

assessment of points was unfair and held meetings with the Plant Manager and Wilson regarding the issue. Despite Plaintiff's documentation, Defendant removed only four of the eight points rather than rescinding the attendance discipline entirely.

28. Similar scheduling issues continued thereafter. Plaintiff was repeatedly left on the schedule during approved vacation time and absences for medical appointments, creating the risk that attendance points would be assessed if he did not notice and challenge the schedule. Plaintiff preserved photographs of schedules reflecting these incidents and complained to Wilson, the Production Supervisor, the Plant Manager, and Human Resources representative Julie Rocha. On multiple occasions, Julie Rocha and a Production Supervisor acknowledged that Plaintiff's continued appearance on the schedule during approved time off was a mistake and told him not to worry about it.

29. Wilson also subjected Plaintiff to heightened scrutiny regarding routine breaks. On one occasion, while Plaintiff had been in the break room for less than five minutes of a permitted fifteen-minute break, Wilson entered the break room and loudly accused Plaintiff, in front of other employees, of taking too long a break. A coworker immediately told Wilson

that Plaintiff had only just arrived. Plaintiff reported the incident to Julie Rocha, who held a meeting with Plaintiff and Wilson and stated that the conduct would not happen again. Wilson did not apologize and instead warned Plaintiff that he would monitor the cameras. Plaintiff understood this incident, together with the repeated scheduling and attendance-point issues, as part of a continuing pattern in which Wilson singled him out for heightened scrutiny and discipline.

30. Throughout his employment, Plaintiff was required to work with dangerous chemicals without being provided appropriate Personal Protective Equipment ("PPE"). In or about January 2024, Plaintiff was compelled to place his hands into harsh chemicals to check samples without proper PPE, causing a chemical burn to his right hand. Plaintiff immediately reported the incident to a supervisor, Ahmad, and stated that the practice was unsafe.

31. Plaintiff was also repeatedly required by supervisor Jeffery Wilson to clean machinery while harsh chemicals dripped onto Plaintiff's head, forehead, face, and body without adequate protective equipment. Plaintiff continues to have visible burn marks on his forehead from these chemical exposures.

32. Plaintiff reported the unsafe chemical exposure and lack of PPE to Wilson, a safety supervisor, and through Defendant's Velocity EHS safety application. After Defendant failed to correct the conditions, Plaintiff reported the violations to the Occupational Safety and Health Administration ("OSHA").

33. After Plaintiff informed Wilson and the Production Manager that he had reported the conditions to OSHA, management abandoned a threatened write-up and termination. OSHA thereafter contacted Defendant's Human Resources department concerning Plaintiff's complaint. Defendant subsequently provided chemical-resistant boots, but failed to provide the face, respiratory, and other protective equipment Plaintiff contends was necessary for the continuing chemical exposure.

34. Following continued chemical exposure and workplace harassment, Plaintiff experienced cluster headaches lasting more than one week, generally occurring around 9:00 to 9:30 a.m. Plaintiff sought urgent-care and emergency treatment and also received treatment from an ENT specialist. Defendant assessed attendance points for work missed while Plaintiff sought treatment for symptoms he attributes to the workplace chemical conditions.

35. Plaintiff suffers from chronic migraines, cluster headaches, and a work-related knee injury, for which he received medical treatment, including treatment from Dr. Anil Bhatia and Dr. Kavita Kalidas at the Center for Neurology, Headache and Integrative Medicine and treatment from an ENT specialist. As part of his treatment, Plaintiff was prescribed Hydroxyzine HCI 25mg, which caused drowsiness. Plaintiff reported the medication-related drowsiness to his supervisor, Jeffery Wilson, and Defendant was aware of Plaintiff's medical conditions and the sedating effects of his prescribed medication.

36. Plaintiff continued to raise safety concerns internally and externally, including complaints to the Plant Manager, Human Resources (including Julie Rocha), the Vice President, and the CEO regarding unsafe working conditions and discriminatory treatment. Plaintiff also pursued his OSHA complaint after Defendant failed to fully correct the hazardous conditions.

37. In response to Plaintiff's protected activity in reporting these safety violations, Defendant's Plant Manager and Human Resources, including Julie Rocha, sent Plaintiff home and instructed him not to return to work until he submitted a "Doctor's note physically fit." This action was

clearly retaliatory and designed to punish Plaintiff for his legitimate safety complaints.

38. Plaintiff complied with Defendant's demand and obtained medical clearance from his treating physician, Dr. Kavita Kalidas, on May 19, 2025, confirming that he was physically fit to work normal hours. However, Defendant provided no direct follow-up for over two weeks, instead sending a vague email stating they had been trying to reach Plaintiff, a shift from the prior reliable email and text communication method.

39. On May 16, 2025, during a power surge or outage at the facility that left machinery idle while operations were being restored, Plaintiff experienced drowsiness associated with his prescribed Hydroxyzine and fell asleep. Plaintiff had previously advised Wilson that the medication caused drowsiness. During similar idle periods, other employees routinely used their phones, accessed the internet, or remained in areas outside management's view without being written up or terminated. Defendant nevertheless singled Plaintiff out for questioning and discipline and later used the May 16 incident as the stated basis for termination.

40. On May 29, 2025, Plaintiff visited Sunshine Medicine Associates for an occupational medicine evaluation. The provider explicitly

recommended that Plaintiff wear a respirator or respiratory protective equipment to protect his airways from harsh chemicals at work and confirmed that Plaintiff was clinically stable to return to work with caution in handling chemicals.

41. On June 23, 2025, the same day Plaintiff filed a charge of discrimination with the EEOC, Defendant terminated Plaintiff's employment effective immediately. At 5:37 PM that evening, Julie Rocha sent Plaintiff an email attaching a termination letter citing "safety infraction of sleeping on the job" as the reason for termination. This termination was clearly pretextual and in direct retaliation for Plaintiff's protected activity in reporting safety violations to both the company and OSHA, as well as filing his EEOC charge.

42. The timing of the termination, occurring on the same day as Plaintiff's EEOC filing and shortly after his safety complaints and OSHA reports, demonstrates the retaliatory nature of Defendant's actions.

43. Throughout his employment, the discriminatory treatment and hostile work environment created by Defendant caused Plaintiff significant emotional distress. Plaintiff experienced depression and anxiety as a direct result of the discrimination and verbal abuse he endured at work. Plaintiff

disclosed these mental health impacts to his supervisor, Jeffery Wilson, but Defendant failed to take any meaningful action to address the underlying discriminatory conduct.

44. As a result of Defendant's unlawful actions, Plaintiff has suffered significant damages including lost wages, lost benefits (medical, dental, vision, HSA, 401(k) match, life insurance), emotional distress, depression, anxiety, and other compensable losses. Plaintiff has undertaken efforts to mitigate his economic damages and, on July 21, 2026, began new employment with Dart Container in Plant City, Florida, as a Machine Operator. Plaintiff seeks back pay and other economic damages subject to any legally required offset for interim earnings.

## COUNT I
## VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT
## RACE DISCRIMINATION

45. Plaintiff alleges, realleges, and incorporates by reference all allegations set forth in each of the preceding Paragraphs 1 through 44 of this Complaint as though fully set forth herein.

46. At all times material hereto, Defendant was an employer within the meaning of the Florida Civil Rights Act of 1992, § 760.02(7), Florida Statutes.

47. At all times material hereto, Plaintiff was a member of a protected class under the FCRA by virtue of his race as an Indian/South Asian male.

48. At all times material hereto, Plaintiff was qualified for the positions he held and performed his job duties in a satisfactory manner.

49. Defendant subjected Plaintiff to materially adverse employment actions and less favorable terms and conditions of employment because of his race.

50. Specifically, Defendant repeatedly denied Plaintiff advancement opportunities and promotions to supervisory positions, instead promoting less qualified non-Indian employees to those positions, demonstrating a pattern of discriminatory treatment based on Plaintiff's race.

51. Defendant's direct supervisor, Jeffery Wilson, consistently issued "needs improvement" ratings in Plaintiff's bi-annual performance evaluations, which were unfounded and reflected discriminatory bias based on Plaintiff's race.

52. Defendant created and maintained a hostile work environment based on Plaintiff's race, subjecting him to verbal abuse, disparate treatment,

repeated attendance-point and scheduling irregularities involving approved leave, and heightened scrutiny of routine break time.

53. Defendant subjected Plaintiff to disparate treatment regarding discipline by terminating his employment for the May 16, 2025 sleeping incident associated with prescribed medication, while other employees were not disciplined for using phones, accessing the internet, or remaining in blind spots during comparable periods when machinery was idle following a power disruption.

51. Defendant's termination of Plaintiff's employment on June 23, 2025, was motivated by Plaintiff's race in violation of § 760.10, Florida Statutes.

52. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff suffered damages, including but not limited to lost wages, lost benefits, lost earning capacity, emotional distress, mental anguish, humiliation, embarrassment, and other compensatory damages.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendant, and grant the following relief: (a) a declaratory judgment that Defendant violated the Florida Civil Rights Act; (b) an award of back pay with interest; (c) an award of front pay or

reinstatement; (d) compensatory damages for emotional distress and other non-economic harm; (e) pre-judgment and post-judgment interest; (f) attorneys' fees and costs pursuant to § 760.11(5), Florida Statutes; and (g) such other equitable relief as this Court deems just and proper.

**COUNT II**
**VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT**
**NATIONAL ORIGIN DISCRIMINATION**

53. Plaintiff alleges, realleges, and incorporates by reference all allegations set forth in each of the preceding Paragraphs 1 through 44 of this Complaint as though fully set forth herein.

54. At all times material hereto, Defendant was an employer within the meaning of the Florida Civil Rights Act of 1992, § 760.02(7), Florida Statutes.

55. At all times material hereto, Plaintiff was a member of a protected class under the FCRA by virtue of his national origin as an Indian born in India and a permanent resident of the United States who holds a valid green card.

56. At all times material hereto, Plaintiff was qualified for the positions he held, having obtained a Bachelor's Degree from Nagarjuna University in India and possessing relevant professional experience.

57. Defendant subjected Plaintiff to materially adverse employment actions and less favorable terms and conditions of employment because of his national origin.

58. Specifically, Defendant repeatedly denied Plaintiff advancement opportunities and promotions to supervisory positions, instead promoting less qualified employees, demonstrating a pattern of discriminatory treatment based on Plaintiff's national origin.

59. Defendant disregarded Plaintiff's qualifications as a university graduate from India in favor of less qualified employees, subjecting him to discriminatory performance evaluations, disparate treatment, repeated attendance and scheduling scrutiny, and a hostile work environment based on his national origin.

60. Defendant's termination of Plaintiff's employment on June 23, 2025, was motivated by Plaintiff's national origin in violation of § 760.10, Florida Statutes.

61. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff suffered damages, including but not limited to lost wages, lost benefits, lost earning capacity, emotional distress, mental anguish, humiliation, embarrassment, and other compensatory damages.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendant, and grant the following relief: (a) a declaratory judgment that Defendant violated the Florida Civil Rights Act; (b) an award of back pay with interest; (c) an award of front pay or reinstatement; (d) compensatory damages for emotional distress and other non-economic harm; (e) pre-judgment and post-judgment interest; (f) attorneys' fees and costs pursuant to § 760.11(5), Florida Statutes; and (g) such other equitable relief as this Court deems just and proper.

## COUNT III
## VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT
## DISABILITY DISCRIMINATION

62. Plaintiff alleges, realleges, and incorporates by reference all allegations set forth in each of the preceding Paragraphs 1 through 44 of this Complaint as though fully set forth herein.

63. At all times material hereto, Defendant was an employer within the meaning of the Florida Civil Rights Act of 1992, § 760.02(7), Florida Statutes.

64. At all times material hereto, Plaintiff had disabilities, including chronic migraines, cluster headaches, anxiety, depression, allergic rhinitis,

and chronic sinusitis, which substantially limited one or more major life activities within the meaning of § 760.02(8), Florida Statutes.

65. Defendant had knowledge of Plaintiff's medical conditions and medication-related limitations through Plaintiff's reports to management, including his report to supervisor Jeffery Wilson that Hydroxyzine caused drowsiness, as well as medical documentation and subsequent occupational medicine recommendations.

66. Plaintiff was qualified to perform the essential functions of his position with or without reasonable accommodation.

67. Defendant discriminated against Plaintiff because of his disability in violation of § 760.10, Florida Statutes, by subjecting him to adverse employment actions and unfavorable terms and conditions of employment.

68. Defendant failed to adequately address Plaintiff's reported medical and safety-related limitations and failed to provide adequate protective equipment despite Plaintiff's repeated PPE complaints and the later medical recommendation from Sunshine Medicine Associates that he use respiratory protection when handling harsh chemicals.

69. Defendant treated the May 16, 2025 sleeping incident as grounds for termination even though Plaintiff had previously informed Wilson that his prescribed Hydroxyzine caused drowsiness and the incident occurred while machinery was idle during a power disruption.

70. Defendant terminated Plaintiff's employment on June 23, 2025, because of his disability or perceived disability in violation of § 760.10, Florida Statutes.

71. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff suffered damages, including but not limited to lost wages, lost benefits, lost earning capacity, emotional distress, mental anguish, humiliation, embarrassment, and other compensatory damages.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendant, and grant the following relief: (a) a declaratory judgment that Defendant violated the Florida Civil Rights Act; (b) an award of back pay with interest; (c) an award of front pay or reinstatement; (d) compensatory damages for emotional distress and other non-economic harm; (e) pre-judgment and post-judgment interest; (f) attorneys' fees and costs pursuant to § 760.11(5), Florida Statutes; and (g) such other equitable relief as this Court deems just and proper.

**COUNT IV**
**VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT**
**RETALIATION**

72. Plaintiff alleges, realleges, and incorporates by reference all allegations set forth in each of the preceding Paragraphs 1 through 44 of this Complaint as though fully set forth herein.

73. At all times material hereto, Defendant was an employer within the meaning of the Florida Civil Rights Act of 1992, § 760.02(7), Florida Statutes.

74. Plaintiff engaged in protected activity under the FCRA by:

a. Complaining internally to Human Resources (Julie Rocha), the Plant Manager, Vice President, and CEO about unsafe working conditions, including chemical exposure without appropriate Personal Protective Equipment;

b. Requesting reasonable accommodation in the form of a respirator or PPE for his disability;

c. Reporting safety violations through Defendant's Velocity EHS reporting system;

d. Filing complaints with OSHA regarding workplace safety violations;

e. Complaining about discriminatory treatment, including denial of promotions and discriminatory performance evaluations, based on his race and national origin; and

f. Filing a Charge of Discrimination with the EEOC and FCHR on June 23, 2025.

75. Defendant had knowledge of Plaintiff's protected activity through Plaintiff's internal complaints to management and Human Resources, his reports through the Velocity EHS system, OSHA complaints, and the filing of his EEOC charge.

76. Following Plaintiff's protected activity, Defendant engaged in materially adverse employment actions against Plaintiff, including but not limited to:

a. Sending Plaintiff home and requiring him to provide medical clearance before returning to work;

b. Failing to follow up or communicate with Plaintiff after he submitted medical clearance on May 19, 2025;

c. Shifting from reliable email and text communication to vague email communication stating they had been trying to reach him;

d. Suspending Plaintiff pending investigation; and

e. Terminating Plaintiff's employment on June 23, 2025, the same day he filed his EEOC charge.

77. A causal connection exists between Plaintiff's protected activity and the adverse employment actions, as evidenced by:

a. Temporal proximity, including termination on the same day as the EEOC charge filing, approximately five weeks after the May 16, 2025 incident, and shortly after submitting medical documentation;

b. Pretext, in that the stated reason of "sleeping on the job" was pretextual because the sleeping was due to prescribed medication for a work-related condition known to Defendant, occurred during a power outage, and Plaintiff had medical clearance to return to work; and

c. A pattern of retaliatory conduct that escalated after Plaintiff's complaints.

78. Defendant's actions would dissuade a reasonable worker from making or supporting a charge of discrimination or reporting safety violations.

79. As a direct and proximate result of Defendant's unlawful retaliation, Plaintiff has suffered and continues to suffer damages, including but not limited to:

a. Lost wages and benefits;

b. Lost earning capacity;

c. Emotional distress, including exacerbation of anxiety and depression;

d. Mental anguish;

e. Humiliation and embarrassment; and

f. Other compensatory damages.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendant, and grant the following relief: (a) a declaratory judgment that Defendant violated the retaliation prohibition of the Florida Civil Rights Act; (b) an award of back pay with interest; (c) an award of front pay or reinstatement; (d) compensatory damages for emotional distress and other non-economic harm; (e) pre-judgment and post-judgment interest; (f) attorneys' fees and costs pursuant to § 760.11(5), Florida Statutes; and (g) such other equitable relief as this Court deems just and proper.

## COUNT V
## VIOLATION OF 42 U.S.C. § 1981 (RACE DISCRIMINATION)

80. Plaintiff alleges, realleges, and incorporates by reference all allegations set forth in each of the preceding Paragraphs 1 through 44 of this Complaint as though fully set forth herein.

81. At all times material hereto, Defendant was subject to 42 U.S.C. § 1981, which provides that all persons shall have the same right to make and enforce contracts as is enjoyed by white citizens.

82. Plaintiff is an Indian/South Asian male and a member of a protected class under 42 U.S.C. § 1981.

83. Plaintiff's employment relationship with Defendant constituted a contract within the meaning of 42 U.S.C. § 1981.

84. Plaintiff had the same right to make and enforce his employment contract on equal terms as white employees.

85. Defendant intentionally interfered with Plaintiff's contractual rights and subjected him to discrimination on the basis of his race by:

a. Repeatedly denying Plaintiff promotions to supervisory positions while promoting less qualified white or non-Indian employees;

b. Issuing discriminatory "needs improvement" performance evaluations through supervisor Jeffery Wilson;

c. Subjecting Plaintiff to disparate treatment and a hostile work environment based on his race;

d. Refusing to provide Personal Protective Equipment despite repeated requests and medical recommendations; and

e. Terminating Plaintiff's employment on June 23, 2025.

86. These actions were intentional, motivated by Plaintiff's race, and deprived Plaintiff of equal terms and conditions of employment enjoyed by white employees.

87. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff suffered damages, including lost wages, lost benefits, lost earning capacity, and emotional distress.

88. Defendant's conduct was willful, wanton, and in reckless disregard of Plaintiff's federally protected rights, entitling Plaintiff to punitive damages.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendant, and grant the following relief:

(a) a declaratory judgment that Defendant violated 42 U.S.C. § 1981; (b) compensatory damages, including back pay, front pay, lost wages, lost benefits, lost earning capacity, and emotional distress; (c) punitive damages; (d) pre-judgment and post-judgment interest; (e) attorneys' fees and costs; and (f) such other equitable relief as this Court deems just and proper.

**COUNT VI**
**VIOLATION OF 42 U.S.C. § 1981 (RETALIATION)**

89. Plaintiff alleges, realleges, and incorporates by reference all allegations set forth in each of the preceding Paragraphs 1 through 44 of this Complaint as though fully set forth herein.

90. Plaintiff engaged in activity protected under 42 U.S.C. § 1981 by opposing race discrimination and asserting his right to equal treatment in his employment contract, including:

a. Making internal complaints about discriminatory denial of promotions and evaluations based on race;

b. Complaining about disparate treatment based on his race as an Indian employee; and

c. Filing an EEOC charge on June 23, 2025, alleging race discrimination.

91. After engaging in this protected activity, Defendant retaliated against Plaintiff by:

a. Requiring Plaintiff to obtain medical clearance and interfering with his ability to work;

b. Failing to follow up after Plaintiff submitted medical clearance on May 19, 2025;

c. Using the May 16, 2025 medication-induced sleeping incident as pretextual grounds for discipline despite Defendant's knowledge of the medication's sedative effects and Plaintiff's medical clearance; and

d. Terminating Plaintiff's employment on June 23, 2025, the same day he filed his EEOC charge.

92. A causal connection exists between Plaintiff's protected activity and the adverse actions, as demonstrated by temporal proximity, pretext, and a pattern of retaliatory conduct.

93. Defendant's retaliation interfered with Plaintiff's right to enforce his employment contract on equal terms with white employees.

94. As a direct and proximate result of Defendant's unlawful retaliation, Plaintiff suffered damages, including lost wages, lost benefits, lost earning capacity, and emotional distress.

95. Defendant's conduct was willful, wanton, and in reckless disregard of Plaintiff's federally protected rights, entitling Plaintiff to punitive damages.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendant, and grant the following relief: (a) a declaratory judgment that Defendant violated 42 U.S.C. § 1981; (b) compensatory damages, including back pay, front pay, lost wages, lost benefits, lost earning capacity, and emotional distress; (c) punitive damages; (d) pre-judgment and post-judgment interest; (e) attorneys' fees and costs; and (f) such other equitable relief as this Court deems just and proper.

## COUNT VII
## VIOLATION OF THE FLORIDA PRIVATE WHISTLEBLOWER ACT
## Fla. Stat. § 448.102

96. Plaintiff alleges, realleges, and incorporates by reference all allegations set forth in each of the preceding Paragraphs 1 through 44 of this Complaint as though fully set forth herein.

97. At all times material hereto, Defendant was a private employer subject to the Florida Private Whistleblower Act, Fla. Stat. § 448.102 et seq.

98. Defendant violated OSHA regulations, including 29 C.F.R. Part 1910 general industry standards, by:

a. Failing to provide required Personal Protective Equipment, specifically respirators, to employees exposed to hazardous chemicals;

b. Exposing employees, including Plaintiff, to hazardous substances without adequate controls;

c. Failing to conduct required hazard assessments; and

d. Failing to provide a workplace free from recognized hazards.

99. Plaintiff engaged in protected whistleblowing activity under § 448.102 by:

a. Reporting to OSHA violations of workplace safety regulations, specifically the failure to provide respirators and exposure to hazardous chemicals that caused a burning sensation in Plaintiff's nose;

b. Objecting to and refusing to participate in unsafe work practices by requesting proper Personal Protective Equipment;

c. Making internal complaints through Defendant's Velocity EHS reporting system regarding safety violations; and

d. Complaining to the Plant Manager, Human Resources (Julie Rocha), Vice President, and CEO about unsafe working conditions that violated OSHA regulations.

100. These activities constitute disclosure of violations of law or rule to an appropriate governmental authority (OSHA) and objection to Defendant's policy or practice that is in violation of law.

101. Defendant had actual knowledge of Plaintiff's protected whistleblowing activity. Plaintiff expressly told Wilson and the Production Manager that he had reported the safety conditions to OSHA, and OSHA thereafter contacted Defendant's Human Resources department concerning Plaintiff's complaint.

102. Following Plaintiff's protected whistleblowing activity, Defendant subjected Plaintiff to adverse employment actions, including:

a. Sending Plaintiff home and requiring him to obtain medical clearance before returning to work;

b. Failing to provide follow-up communication after Plaintiff submitted medical clearance on May 19, 2025; and

c. Terminating Plaintiff's employment on June 23, 2025.

103. A causal connection exists between Plaintiff's whistleblowing activity and the adverse actions, including management's threatened discipline after his safety complaints, its reaction when Plaintiff disclosed that he had contacted OSHA, OSHA's subsequent contact with Human Resources, the incomplete corrective response, and the later use of the May 16, 2025 incident as grounds for termination.

104. Defendant's stated reason for termination, a "safety infraction of sleeping on the job," was pretextual. Plaintiff had reported that his prescribed medication caused drowsiness, the incident occurred during a power disruption while equipment was idle, and other employees were not disciplined for comparable non-work conduct during idle periods.

105. Defendant knew of the OSHA complaints and was motivated to silence Plaintiff's continued safety advocacy.

106. As a direct and proximate result of Defendant's violation of § 448.102, Plaintiff has suffered and continues to suffer economic losses, including lost wages and lost benefits, as well as non-economic damages, including emotional distress and mental anguish.

107. Defendant's violation of the Florida Private Whistleblower Act was willful, entitling Plaintiff to a civil penalty of up to $10,000 pursuant to § 448.103, Florida Statutes.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendant, and grant the following relief: (a) a declaratory judgment that Defendant violated Fla. Stat. § 448.102; (b) reinstatement or front pay; (c) back pay with interest; (d) compensatory damages for economic and non-economic harm; (e) a civil penalty up to $10,000 if the violation was willful pursuant to § 448.103, Florida Statutes; (f) reasonable attorneys' fees and costs pursuant to § 448.104, Florida Statutes; (g) pre-judgment and post-judgment interest; and (h) such other equitable relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff respectfully requests a trial by jury.

Dated this 10th day of September 2026.

*/s/ Jason W. Imler, Esq*
Jason W. Imler
Florida Bar No. 1004422
Alberto "Tito" Gonzalez
Florida Bar No. 1037033
**Imler Law**
23110 State Road 54, Unit 407
Lutz, Florida 33549
(P): 813-553-7709
Jason@ImlerLaw.com
Tito@ImlerLaw.com
Ashley@ImlerLaw.com
Tiffany@ImlerLaw.com